UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

JOSEPH A. FERRARA, SR., et al,

                Plaintiffs,

        - against -

STALLONE TESTING LABORATORIES,
INC.,

                Defendant.

------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

10 CV 901 (ENV)

On March 1, 2010, plaintiffs, who are Trustees of the Local 282 Welfare, Pension, and

Annuity Trust Funds (the "Funds"), brought this action against defendant, Stallone Testing

Laboratories, Inc. ("Stallone" or the "Company"), alleging violations of Sections 502 and 515 of

the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§

1132, 1145.

Despite proper service of the Complaint, defendant has not answered or otherwise

appeared in this action. On June 21, 2010, plaintiffs filed a motion for a default judgment, and

on the same day, the Clerk of Court entered a notation of default. On August 13, 2010, the

Honorable Eric N. Vitaliano granted plaintiffs' motion for default judgment and referred the

matter to the undersigned for a determination with respect to damages. Accordingly, on July 15,

2011, the Court held an inquest hearing to determine damages.

For the reasons set forth below, the Court respectfully recommends that plaintiffs' request

for an Order directing defendant to submit to an audit of their books and records be granted.

Should defendant fail to comply with this Order, the Court respectfully recommends that

plaintiffs be awarded damages pursuant to the 2005-2010 Construction and Materials Inspection

Agreement (the "CBA") and the Restated Agreement and Declaration of Trust (the "Trust Agreement") in the amount of $290,154.28.

## BACKGROUND

Plaintiffs are Trustees and fiduciaries of the Funds, which are "employee benefit plans" and "multiemployer plans"within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3), 1002(37). (Compl.[1] ¶¶ 3, 4; Cody Supp. Decl.[2] ¶¶ 3, 4).

Defendant, Stallone Testing Laboratories, is a New York corporation with its principal place of business located in Port Chester, New York. (Compl. ¶ 8). Stallone is engaged in the "construction and materials inspection business." (Id.) Stallone is a party to a CBA with Local 282 of the International Brotherhood of Teamsters ("Local 282" or the "Union"). (Id. ¶¶ 5, 9; Cody Supp. Decl. ¶ 6, Ex. B). Pursuant to the CBA, Stallone is required to remit contributions to the Funds for any employee who performs work covered by the CBA. (Compl. ¶ 5; Cody Supp. Decl. ¶ 9).

Under the CBA, an employer, such as Stallone, is bound to the terms of the Trust Agreement, which require employers to submit monthly remittance reports and contributions to the Funds. (Compl. ¶¶ 11, 12; Cody Supp. Decl. ¶¶ 8, 9). The Trust Agreement also requires an employer to submit to periodic audits of the Company's books and records to verify that contributions have been made on behalf of covered employees. (Compl. ¶¶ 13, 16; Cody Supp. Decl. ¶ 10).

---

[1]Citations to "Compl." refer to plaintiff's Complaint, dated March 1, 2010.

[2]Citations to "Cody Supp. Decl." refer to the Supplemental Declaration of Theresa Cody, dated June 28, 2011. Ms. Cody is the senior member of the Collections Department of the Funds. (Cody Supp. Decl. ¶ 1).

Article IX, Section 1(c) of the Trust Agreement provides that when an employer fails to submit the required monthly remittance reports, and/or fails to submit to an audit request within a specified time period, the employer is required to pay an increased monthly contribution, computed in accordance with formulas set forth in the Trust Agreement. (Compl. ¶¶ 18, 19; Cody Supp. Decl. ¶¶ 13, 14). The Trust Agreement further provides that when an audit discloses delinquent contributions, the employer is required to remit said contributions along with interest, liquidated damages, audit fees, attorneys' fees, and costs. (Compl. ¶ 20).

Plaintiffs allege that in letters dated June 23, 2009 and July 15, 2009, the Funds' auditors requested that Stallone submit to an audit for the period beginning March 5, 2008 and ending March 31, 2009. (Compl. ¶ 21; see also Cody Supp. Decl. ¶ 11). By letter dated October 7, 2009, counsel for the Funds requested an audit for the period beginning March 5, 2008. (Compl. ¶ 22). When Stallone failed to comply as required under the Trust Agreement, the Funds commenced this action to compel an audit of Stallone's books and records, and to collect any delinquent contributions identified by the audit, along with interest and attendant damages.

## DISCUSSION

I.  Default Judgment

A.  Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default. Rule 55 sets forth a two-step process for entering a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of the Court

3

automatically enters the default pursuant to Rule 55(a) by notation of the party's default on the clerk's record of the case. See id. Second, after the Clerk of the Court enters default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter default judgment. See Fed. R. Civ. P. 55(b).

Where the amount of damages owed requires a judicial finding, a default judgment may be entered once the court has conducted a hearing or made a referral to determine the question of damages. See Fed. R. Civ. P. 55(b). That said, while "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Services, Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (citing Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985)), aff'd, 873 F.2d 38 (2d Cir. 1989).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an extreme remedy that "must remain a weapon of last, rather than first, resort." Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. Furthermore, "[Rule 55(b)] states that a judgment by default 'may' be entered under specified circumstances, not that it must." Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (ordering an inquest to determine damages and stating that where a court enters a default judgment, it is required to

4

"supervise [that entry] . . . with extreme care to avoid [a] miscarriage[] of justice"). Accordingly, plaintiff is not entitled to a default judgment as a matter of right, simply because the defendants are in default. Id.

The court has significant discretion and may consider a number of factors in deciding whether to grant a default judgment. These factors include "'the amount of money potentially involved' (citation omitted)[,] . . . 'whether the grounds for default are clearly established,'" Hirsch v. Innovation Int'l, Inc., WL 316143, at *2 (quoting Charles A. Wright, et al., 10 Fed. Practice and Procedure: § 2685, at 425-26 (2d ed. 1983)), and whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice. See Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"). Additionally, a court may consider whether the facts alleged in the complaint state a valid cause of action, whether there are unresolved questions regarding material issues of fact as to liability or damages, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (discussing factors); Charles A. Wright, et al., 10A Fed. Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

B. Entry of Default Judgment

In this case, it is beyond dispute that the defendant is in default since the defendant failed to file an Answer to the Complaint, failed to oppose plaintiffs' motion for a default judgment, and failed to challenge the Court's entry of a default. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that the defendant's default was "crystal clear" as evidenced by its failure to oppose plaintiff's motion for a default judgement). Moreover, defendant has declined

5

to obtain counsel which constitutes a failure to defend because defendant, a corporation, cannot proceed pro se in federal court. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).

Given the numerous opportunities afforded defendant, and its apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay further in entering a default judgment. When a defendant defaults, the defendant is deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages." See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986). The Court, however, must review the allegations in the complaint to determine if the elements of each claim have been adequately pleaded. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.


C. Liability for ERISA Claims

The facts alleged in the Complaint are adequate to state claims under Section 515 of ERISA. Section 515 provides as follows: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Section 502(a)(3) provides that a civil action may be brought by a fiduciary to "obtain . . . appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title or the terms of the plan." 29

6

U.S.C. § 1132(a)(3). Numerous courts have held that under ERISA, fiduciaries of covered funds have a duty to identify and collect delinquent contributions through an audit of the employer's books and records. See, e.g., N. Y. Teamsters Conf. Pension & Ret. Fund v. Boening Bros., Inc., 92 F.3d 127, 130-32 (2d Cir. 1996) (holding that audits are "well within the scope of a trustee's common law fiduciary duties and powers"); Jaspan v. Glover Bottled Gas Corp., 80 F.3d 38, 41 (2d Cir. 1996) (holding that "fund trustees have a fundamental duty to locate and take control of fund property – a duty for which the right to audit is crucial"); see also Central States, Southeast & Southwest Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 571-72 (1985) (stating that "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled . . .").

Plaintiffs allege that the defendant is bound by the terms of the CBA and Trust Agreement, which require the Company to submit to an audit and to remit any delinquent contributions. (Compl. ¶ 26). Plaintiffs further allege that despite repeated demands, Stallone has refused to submit to an audit, and thus the Funds are entitled to injunctive relief requiring defendant to submit to an audit. (Id. ¶ 29).

Based on the undisputed allegations in the Complaint, plaintiffs have sufficiently alleged the elements necessary to establish that defendant breached its fiduciary duty under ERISA and the CBA, directly and proximately resulting in a loss to the Funds.

D. Injunctive Relief

Plaintiffs seek an Order requiring defendant to comply with its obligations the CBA and Trust Agreement by submitting to an audit of its books and records. (Compl. ¶ 29). Injunctive relief is provided for under Section 1132(g)(2)(E) of ERISA, which states that in a successful

ERISA enforcement action, a plaintiff may recover "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E); see Beck v. Levering, 947 F.2d 639, 641 (2d Cir. 1991) (per curiam), cert. denied, 504 U.S. 909 (1992); Lanzafame v. L & M Larjo Co., Inc., No. 03 CV 3640, 2006 WL 2795348, at *9 (E.D.N.Y. Sept. 26, 2006) (citing cases); King v. Nelco Indus., Inc., No. 96 CV 4177, 1996 WL 629564 (E.D.N.Y. Oct. 23, 1996).

In this case, where defendant has defaulted and the operative CBA and Trust Agreements require defendant to submit to the requested audit, plaintiffs have provided the Court with sufficient evidence to satisfy the requirements for entry of an injunction. See King v. Nelco Indus., Inc., 1996 WL 629564, at *1 (internal citations omitted). Accordingly, the Court respectfully recommends that an Order issue requiring Stallone to immediately submit to an audit of its books and records, pursuant to the terms of the CBA and Trust Agreement. If defendant complies by submitting to an audit of its books and records, this Court respectfully recommends that the matter be referred to the undersigned to consider any request by plaintiffs for delinquent contributions identified through the audit to be due and owing, along with any requests for interest, liquidated damages, attorneys' fees, and costs.

If, however, Stallone fails to comply, the Court respectfully recommends that the Funds be awarded damages in accordance with the terms of the Trust Agreement, which permits the Trustees to estimate the amount of contributions due if an employer fails to submit to an audit. Based on the provisions of the CBA and Trust Agreement, along with the supporting documentation submitted by the Funds, the Court respectfully recommends that plaintiffs be awarded damages as set forth below if Stallone fails to submit to an audit within ten days of an Order adopting this Report and Recommendation.

8

II.   Damages

A. Legal Standard

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on plaintiffs to establish their entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Defendants who default are entitled to discovery regarding unliquidated damages. See Securities & Exch. Comm'n v. Wang, No. 88 CV 4461, 1989 WL 135558, at *1 (S.D.N.Y. May 22, 1989); Clague v. Bednarski, 105 F.R.D. 552, 552 (E.D.N.Y. 1985). When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:

> [t]he court may conduct hearings . . . when, to enter or effectuate a
> judgment, it needs to:
>> (A) conduct an accounting;
>> (B) determine the amount of damages;
>> (C) establish the truth of any allegation by evidence; or
>> (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2).

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). These damages include:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an
>> amount not in excess of 20 percent (or such higher
>> percentage as may be permitted under Federal or State law)
>> of the amount determined by the court under subparagraph
>> (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by

the defendant, and
(E) such other legal or equitable relief as the court deems
appropriate.

Id.; see also Iron Workers Dist. Council of Western New York and Vicinity Welfare & Pension

Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-07 (2d Cir. 1995).

In this case, the Court held a hearing on July 15, 2011. The Court notes that it afforded

defendant an opportunity to submit documentation to help confirm the accuracy of plaintiffs'

claims for damages. (See June 2011 Order[3]). Defendant failed to avail itself of this opportunity

and failed to appear for the hearing. Accordingly, the Court has based its recommendations on a

thorough review of plaintiffs' submissions.

### B. Unpaid Contributions[4]

Under the Trust Agreement, when the employer fails to submit to an audit, the Funds

have the right to estimate the contributions owed based on a procedure set forth in the Trust

Agreement. (Cody Supp. Decl. ¶ 13, Ex. A). Where the employer has submitted remittance

reports, the Trust Agreement provides that the employer is liable for estimated contributions

which are computed by taking 50% of the hours reported on the report for that month and

multiplying it by the current contribution rate. (Id. ¶ 14, Ex. A at 29). Where the employer has

failed to submit the required remittance reports, the Funds estimate the contributions owed by

adding 10% to the number of hours for the month in which the greatest number of hours were

---

[3] Citations to "June 2011 Order" refer to the Order issued by this Court on June 15, 2011.

[4] The Court notes that the phrase "unpaid contributions" refers to the amounts allegedly owed by defendant as a result of its refusal to submit to an audit.

reported over the previous twelve remittance reports submitted by the employer. (Id. ¶ 15, Ex. A at 28). That number is then multiplied by the current contribution to arrive at the total contributions owed for that period. (Id.)

According to Theresa Cody, senior member of the Funds' Collection Department, Stallone submitted reports for fifteen (15) of the twenty-six (26) months of the audit period from March 5, 2008 through April 30, 2010. (Id. ¶ 17, Ex. C). No reports have been submitted for the remaining eleven (11) months from June 2009 through April 2010. (Id. ¶ 18).

According to Ms. Cody, the contribution rates for each of the Funds were affected by an $.80 re-allocation in wages that went into effect on July 1, 2009. (Id. ¶ 19, Ex. D). Thus the applicable contribution rates for each of the Funds is as follows:

| Fund Name | March 5, 2008 to April 30, 2008 | May 1, 2008 to April 30, 2009 | May 1, 2009 to June 30, 2009 | July 1, 2009 to April 30, 2010 |
|-----------|------------------|------------------|------------------|------------------|
| Welfare Trust Fund | $7.65 | $8.20 | $8.90 | $8.20 |
| Pension Trust Fund | $1.20 | $1.20 | $1.20 | $1.45 |
| Annuity Trust Fund | $1.20 | $1.20 | $1.20 | $1.65 |

Using these rates of contribution and the formula set forth in the Trust Agreement, Ms. Cody has estimated the amount of contributions owed for the period during which Stallone submitted remittance reports as follows:

## Welfare Trust Fund

| Period | Hours Reported | Contribution Rate | Contributions Owed |
|---|---|---|---|
| March 5, 2008 - April 30, 2008 | 328 hours | $7.65 | $2,509.20 |
| May 1, 2008 - April 30, 2009 | 4,082.75 hours | $8.20 | $33,478.55 |
| May 1, 2009 - June 30, 2009 | 1,113.20 hours | $8.90 | $11,687.48 |
| Total: | | | $47,675.23 |

## Pension Trust Fund

| Period | Hours Reported | Contribution Rate | Contributions Owed |
|---|---|---|---|
| March 5, 2008 - June 30, 2009 | 5,727.95 hours | $1.20 | $6,873.54 |

## Annuity Trust Fund

| Period | Hours Reported | Contribution Rate | Contributions Owed |
|---|---|---|---|
| March 5, 2008 - June 30, 2009 | 5,786.95 hours | $1.20 | $6,944.34 |

(Cody Supp. Decl., Ex. E).

For the period in which no remittance reports were submitted, Ms. Cody identified October 2008 as the month in which Stallone reported the greatest number of hours in the preceding twelve reports submitted prior to June 30, 2009. (Id. ¶ 24). In October 2008, Stallone reported 832 hours to the Welfare and Pension Trust Funds and 844.5 hours to the Annuity Trust Fund. (Id., Ex. C). Using the formula set forth in the Trust Agreement, Ms. Cody calculated

110% of the number of hours reported for each Fund in October 2008 and multiplied that number by the applicable contribution rates as follows:

Period: July 1, 2009 – April 30, 2010

| Fund | Hours Reported | Contribution Rate | Contributions Owed |
|------|----------------|-------------------|--------------------|
| Welfare Trust Fund | 9,152 hours | $8.20 | $75,046.40 |
| Pension Trust Fund | 9,152 hours | $1.45 | $13,270.40 |
| Annuity Trust Fund | 9,289.50 hours | $1.65 | $15,327.68 |
| Total: | | | $103,644.48 |

(Cody Supp. Decl., Ex. E).

Thus, the total amount of contributions owed for the entire audit period is as follows:

| | |
|---|---|
| Welfare Trust Fund | $122,721.63 |
| Pension Trust Fund | $ 20,143.94 |
| Annuity Trust Fund | $ 22,272.02 |
| Total: | $165,137.59 |

Having reviewed the plaintiffs' submissions and calculations, the Court finds that, absent compliance with this Court's Audit Order, plaintiffs are entitled to an award of delinquent contributions in the total amount of $165,137.59, based on the estimation formulas set forth in the Trust Agreement. Accordingly, the Court respectfully recommends that plaintiffs be awarded damages in the amount of $165,137.59.

13

C. Interest

Under ERISA and the CBA, plaintiffs are also entitled to an award of: 1) interest accrued during the period of the delinquency; 2) interest accrued from the date of the commencement of the action through the date of judgment; and 3) interest from the date of judgment until the entire amount is paid. See 29 U.S.C. §§ 1132(a)(9), (g)(2)(B).

Under Section 1132(g)(2) of ERISA, the interest rate is calculated "using the rate provided for under the plan, or, if none, the rate prescribed under Section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). In this case, the Trust Agreement provides for interest to be calculated at the rate of 18% per annum or 1.5% per month. (Cody Supp. Decl. ¶ 27, Ex. A at 60). Interest is calculated from the first day of the month when payment was due through the date of this Report and Recommendation. (Id.)

According to plaintiffs' submissions, defendant owes interest on the following unpaid contributions:

| **Funds** | **Interest Owed On Unpaid Contributions** |
|---|---|
| Welfare Trust Fund | $44,484.71 |
| Pension Trust Fund | $7,149.49 |
| Annuity Trust Fund | $7,787.79 |
| TOTAL | $59,421.99 |

(Cody Supp. Decl. ¶ 32, Ex. E).

Having reviewed plaintiffs' calculations, the Court respectfully recommends that plaintiffs be awarded a total amount of $59,421.99 in interest for the unpaid contributions, plus any interest that accrues from the date of this Report and Recommendation until the entry of judgment, together with post-judgment interest pursuant to 28 U.S.C. § 1961.

14

D. Liquidated Damages

Plaintiffs also requests an award of liquidated damages for unpaid contributions. Pursuant to the Trust Agreement and ERISA, plaintiffs are entitled to liquidated damages for unpaid contributions. See 29 U.S.C. § 1132(g)(2)(c) (providing for an award of liquidated damages in "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent. . ."). In this case, the Trust Agreement provides for liquidated damages in an amount which is the greater of 1) the amount of interest owed, or 2) 20% of the unpaid contributions. (Cody Supp. Decl. ¶ 33). In this case, plaintiffs seek liquidated damages in the amount equal to the interest due on the unpaid contributions as this is greater than 20% of the contributions owed. (Id.)

Based upon defendant's failure to remit the requisite contributions to the Funds for the relevant period, the Court respectfully recommends that plaintiffs be awarded liquidated damages in the amount of $59,421.99, which is equal to the total interest due on the unpaid contributions.

E. Attorney's Fees and Costs

Pursuant to 29 U.S.C. § 1132(g)(2)(D), plaintiffs also request audit costs, as well as reasonable attorney's fees and costs incurred in connection with this action.

1) Audit Costs

Pursuant to the Trust Agreement, Stallone is required to pay audit costs in the amount of $350 or such other amount as the Trustees shall apply. (Cody Supp. Decl. ¶ 34, Ex. A at 30-31). Given that the Trustees were forced to perform two estimated audits in this case (see id. ¶ 35, Ex. E), plaintiffs seek an award of $350 for each audit for a total of $700. (Id. ¶¶ 36, 37). Courts in

this district have previously awarded estimated audit fees under similar provisions. See, e.g., Ferrara v. Cab II Enterprises, Inc., No. 09 CV 1331, 2011 WL 1321983 at * 7 (E.D.N.Y. Feb. 24, 2011), adopted by 2011 WL 1253741 (E.D.N.Y. Mar. 29, 2011); La Barbera v. Tadico Constr. Corp., 646 F. Supp. 2d 247, 254 (E.D.N.Y. 2009).

Accordingly, it is respectfully recommended that plaintiffs be reimbursed for $700 representing audit costs incurred.

### 2) Reasonable Attorney's Fees

Plaintiffs also seek attorney's fees in the amount of $4,908.20, representing services performed by plaintiffs' counsel as of February 28, 2010 in connection with plaintiffs' efforts to obtain this judgment. (Adler Supp. Decl.[5] ¶ 42).

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections, 522 F.3d 182, 183-84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. In Arbor Hill, the Second Circuit adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations

---

[5]Citations to Adler Supp. Decl. refer to the Supplemental Declaration of Michael S. Adler, Esq., dated June 28, 2011.

16

> imposed by the client or the circumstances; 8) the amount involved
> in the case and the results obtained; 9) the experience, reputation,
> and ability of the attorneys; 10) the "undesirability" of the case; 11)
> the nature and length of the professional relationship with the
> client; and 12) awards in similar cases . . . .

Id. at 187 n.3 (citation omitted). A number of courts within the Second Circuit have applied

these factors when awarding attorney's fees. See Manzo v. Sovereign Motor Cars, Ltd., No. 08

CV 1229, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New

York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Lochren v. County of Suffolk,

No. 01 CV 3925, 2008 WL 2039458, at *2 (E.D.N.Y. May 9, 2008); see also Cruz v. Henry

Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise
> and capacity of the client's other counsel (if any), the resources
> required to prosecute the case effectively . . ., the timing demands
> of the case, whether the attorney might have an interest
> (independent of that of his client) in achieving the ends of the
> litigation or might initiate the representation himself, whether the
> attorney might have initially acted pro bono . . ., and other returns
> (such as reputation, etc.) the attorney might expect from the
> representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see

also Heng Chan v. Sung Yue Tang Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y.

May 8, 2007). In awarding attorney's fees, the Court is guided by the fact that default actions are

relatively simple legal matters, while taking into account the attorney's degree of skill and the

Court's own experience dealing with similar claims.

The next step in awarding attorney's fees is determining the reasonableness of the hours

expended by counsel. See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008

WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). The number of hours spent on a lawsuit are

considered unreasonable if they are excessive, redundant, or unnecessary. See, e.g., LaBarbera v. Frank J. Batchelder Transp. LLC, No. 08 CV 3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing Gierlinger v. Gleason,160 F.3d 858, 876 (2d Cir. 1998)); Bourgal v. Atlas Transit Mix, No. 93 CV 0569, 1996 WL 75290, at *7 (E.D.N.Y. Feb. 7, 1996).

In this case, plaintiffs were represented by Cohen, Weiss and Simon LLP (the "Firm"), which is located at 330 West 42nd Street New York, New York, N.Y. 10036. In accordance with N.Y. State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), the Firm submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, along with the name of the attorney and a description of services performed. (Adler Supp. Decl., Ex. B).

The requested attorney's fees total $4,908.20, with the time billed at the following rates: 1) $370.00 per hour for legal work performed by Elizabeth O'Leary, Esq., a partner in the Firm; 2) $275.00 per hour for legal work performed by Michael S. Adler, Esq., an associate, and 3) between $90.00 per hour for work performed by three legal assistants at the Firm. (Id. ¶ 10).

Based on the Court's knowledge of the rates generally charged in this district for this type of work in connection with an ERISA default, the Court finds that the rate of $370.00 per hour for Ms. O'Leary's time is reasonable. See, e.g., King v. Unique Rigging Corp., No 01 Civ. 03797 (DLI)(VVP), 2006 WL 3335011 (E.D.N.Y. Oct. 27, 2006) (finding that $370 per hour for partner time and $320 per hour for mid-level associate time was appropriate in ERISA delinquent contribution cases). Similarly, the Court finds that the rate of $275.00 per hour for the legal work performed by Mr. Adler is within the range of billing rates of similarly experienced attorneys in this district working on comparable matters. See, e.g., id.; NYC Dist. Council of

18

Carpenters Pension Fund v. Quantum Construction, No. 06 Civ. 13150 (GEL)(JCF), 2008 WL 5159777, at *13 (S.D.N.Y. June 19, 2008) (awarding $425 per hour for partner time and $300 per hour for associate time upon entry of a default judgment in an ERISA delinquent contribution case).

Accordingly, the Court respectfully recommends that the requested rates of $370.00 and $250.00 per hour for the attorneys' time be approved.

With regard to the rate charged for paralegal work, the Court respectfully recommends that the requested rate of $90.00 per hour be approved as reasonable and appropriate. See, e.g., King v. Unique Rigging Corp., No 01 Civ. 03797 (DLI)(VVP), 2006 WL 3335011 (E.D.N.Y. Oct. 27, 2006) (finding that $90 per hour for paralegal was "within the reasonable range for ERISA cases in this district").

Having determined that the rates charged in this case are reasonable, the Court now turns to the reasonableness of the number of hours billed in this matter. As previously discussed, the number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary. See, e.g., LaBarbera v. Frank J. Batchelder Transp., 2009 WL 240521, at *4. If the number of hours billed is determined to be unreasonable, the court may exclude that portion of hours it finds to be excessive or unreasonable in its attorney's fees calculations. See id.

Based on the contemporaneous billing records submitted to the Court, the Firm seeks compensation for a total of 26.1 hours of work on this matter from March 1, 2009 to February 28, 2010 for a total of $4,958.50. (Adler Supp. Decl. Id. ¶ 10). The Firm's work on this case included drafting the Complaint, drafting plaintiff's Motion for a Default Judgment and the materials annexed thereto, and preparing supplemental declarations updating the damages

sought. Having carefully examined the billing records, the Court finds that the number of hours charged in this matter is reasonable given the amount of work performed and the fact that the case involves a relatively straightforward ERISA claim.

However, according to Mr. Adler, the Firm and the Funds' Trustees have agreed to a 10% reduction in fees. (Id. ¶ 11). Accounting for the 10% reduction, the Firm is now seeking the reduced amount of $4,908.20. (Id.)

Accordingly, based on the hourly rates set forth above, and the number of hours billed on this matter, the Court respectfully recommends that plaintiffs be awarded $4,908.20 in attorney's fees.

### 3) Reasonable Costs

Plaintiffs also request $564.51 in costs for filing, service of process, postage, photocopies, local ground transportation, and computer research. (Id. ¶ 14, Ex. C). Under Section 502(g)(2)(D) of ERISA, plaintiffs are entitled to recover reasonable costs. See 29 U.S.C. § 1132(g)(2)(D). Accordingly, based on a review of the record, the Court finds the requested costs to be reasonable, and respectfully recommends that plaintiff be awarded $564.51 in costs. See Finkel v. Triple A Group, Inc., 2010 WL 1688359, at *9 (awarding $818.53 in costs for filing fees, service, postage, and photocopying).

### CONCLUSION

In summary, the Court respectfully recommends that plaintiff's motion for a default judgement be granted and that plaintiff be awarded the following damages from defendant: 1) $165,137.59 in unpaid contributions to the Funds; 2) $59,421.99 in interest on the unpaid and

late-paid contributions; 3) $59,421.99 in liquidated damages; 4) $4,908.20 in attorney's fees; 5) $564.51 in costs; and 6) $700 in estimated audit fees, for a total award of $290,154.28, plus any additional interest that accrues from the date of this Report and Recommendation until the entry of judgment, together with post-judgment interest pursuant to 28 U.S.C. § 1961.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.


**SO ORDERED.**

Dated: Brooklyn, New York
      August 5, 2011

Cheryl L. Pollak
United States Magistrate Judge